Good morning, Your Honors. My name is Matt Campbell. I'm with the Federal Defenders of Eastern Washington and Idaho, and I represent Mr. Kenneth Hendryx. I'd like to start, although we have a lot of ground to cover, with perhaps the most narrow issue, which is that presuming that the scenarios case applies, which we don't accept, but presuming that it does, we'd argue that- So do you still take the position that scenarios is not applicable? Your Honor, my position on that would be that the Strickland case, as I understand it, dealt with whether a docket sheet in Maryland provided sufficient evidence to determine whether something was a sexual offense. Scenarios was mentioned, I believe, once early on as defining in regard to some elements. But scenarios was not at issue in Strickland. That's my understanding. I would have said they went out of their way to make sure that we knew that scenarios was law of the ninth circuit. Yeah. They say, under Heading 1 here, a defendant convicted for violating 2252A is subject relating to an aggravated sexual abuse, and then they go on to say, we have broadly interpreted this statute to apply not simply to State offenses that are equivalent to sexual abuse, but rather to, quote, any State offense that stands in some relation bears upon or is associated with that generic offense, close quote, United States v. Scenarios. It seems like the kind of thing you do in an opinion when you want to make sure that you paste that case down as good law. Your Honor, I understand that that's cited, and that's, in effect, why we're moving to the position of even if Scenarios does apply, we still believe there's no match. And the reason for that is that if you look at Scenarios at 741, it cites Lopez-Saliz, a prior case at 1207, and it discusses, even under this broader approach, the contours of what is sexual abuse. Let me lay out for you an outline of what my tentative thinking is, so you can show me where my outline is mistaken. Certainly. It looks to me like there is no Navarro-Lopez problem, because the Navarro-Lopez problem would happen if the statute was underbrought. If the statute is missing an element, then you can't fill it in with a modified categorical approach. And we believe this is missing an element. Under Navarro-Lopez. My thought was that it wasn't missing an element, it was just overbrought, because some people could be convicted under it who did not fit the Federal criteria. Then you take the modified categorical approach, and we know that a charging document is okay under Shepard, so we can look at the amended information. The amended information shows that Hendricks was 41. That fills in the detail that the statute otherwise was too overbrought to include. Once he's 41, we know it's sex abuse of a minor under scenarios, and we need not reach the pattern issue. That's my tentative understanding here, and I want you to show me what I'm missing. Certainly. And I think what you just said that I'm missing is that you think the statute is missing an element. Correct. I certainly agree with Your Honor that it is overbroad, and I believe the government said as much, that it was overbroad. So putting that issue aside, I believe it's missing an element, because in scenarios it discusses, even under its broader scope, what the generic offense is, and it discusses a physical touching of intimate parts for sexual gratification. That's what it says in – that's what it discusses in scenarios. That was the statute at issue in Montana in scenarios. And it cites Lopez-Solis, which involved a Tennessee statute as well. The Idaho statute that he was convicted under, 1835-06, requires physical contact, physical touching, for sexual gratification. But there's no mention of intimate parts in the Idaho statute. I didn't see the intimate parts. When I looked at scenarios, it was very broad. It says sexual is ordinary in common sense meaning, and the abuse was to use or treat so as to injure, hurt or damage, commit indecent assault on, behavior that is harmful emotionally and physically. So where are you looking at? Let me turn to the – maybe you could. It's on page – it's at page 741, and it's – I don't have the case thing in front of me, but it's discussing what an indecent assault is. And perhaps – I'm going to try to reserve some time. I could probably point out to the Court in rebuttal exactly which language I'm speaking to. You must have it underlined right in front of you. And you said it was at 747 you were looking at? 741. Okay. Got it right here. What is it that you're relying on? It's – looks like it's in section B-1, the paragraph beginning, and the Montana statute undeniably prescribes, and it then discusses, the physical touching of another person's sexual or intimate parts for the purposes of sexual arousal or gratification and without consent amounts to an indecent assault on that person. But that's talking about the Montana statute. The definition of sexual abuse for Federal purposes is in the – in section – I guess that's A, the column across in my printout. We define the term sexual abuse by coupling the dictionary definition of abuse with the common understanding of sexual. Our position – again, we believe that scenarios must be limited in some scope to the facts that were before that court and the statutes before that court. If we simply say that sexual abuse is abuse which is sexual, then that leaves everything up to the definition of the State as to what's abuse and what's sexual. There must be some limitations on that. Otherwise, we've – the statute itself then becomes meaningless. So he says – so the decision says under the categorical approach, we follow our common practice in cases involving nontraditional offenses by defining the offense based on the ordinary, contemporary, and common meaning of the statutory words. And then the opinion goes on to do so. And are you saying that that's – that's subject to further narrowing based on the description of the Montana statute? Or maybe I'm not understanding you correctly. I'm not saying that the Montana statute in and of itself is – becomes the Federal standard. But what I'm saying is if one looks to other – if one looks to this case as well as Lopez-Solis and other cases that have discussed this issue, that the issues that they've looked to are physical touching of intimate parts for sexual gratification. That simply saying it's sexual abuse because it's abuse which is sexual is tautological and provides no limitation. If that were what Cenarius said, then the States would get to define just by simply using the words sexual and abuse. Well, Cenarius doesn't really allow that. It says sexual has its ordinary meaning. So if the State has a humpy-dumpy definition to say sexual means something that most people wouldn't think the word sexual meant, that won't fly under Cenarius. Well, I would agree. And I believe that the – that as Cenarius discusses in discussing examples, that to be sexual, there must be both sexual gratification and it must involve intimate parts. Otherwise – And if you have a problem with sexual under 18-1506, it says there has to be an intent to gratify the lust, passions, or sexual desire. Oh, I agree that the intent element is there, but I believe that one needs to – that the contact would need to involve intimate areas. Otherwise, a pat on the head, if one had a head fetish, would satisfy Idaho's statute. To use another example, a foot fetish. Giving a foot massage would satisfy Idaho's statute if the intent was there. I don't believe it would satisfy Cenarius. I don't know if it would or not. Why wouldn't it? Let's say you just hypothesized somebody with a foot fetish who goes out of their way to massage children's feet. I don't believe – I don't believe that feet would be considered intimate areas. I don't believe that a pat on the head or a pat on the back. Intimate areas under Cenarius? Because I believe that the context of Cenarius at 741 discusses – Well, I think you were quoting there the Montana statute has intimate areas, right? That's – In parts, they call them. But the logic of Cenarius is here's what's required. That's A. And then B is here's what Montana has. And then C is that falls within what's required. I would agree that that's the way the opinion is set forth. But I believe that the common sense definition of the word sexual implies some sort of sexual contact. Again, otherwise, the phrase sexual can essentially be read out of it in regard to if the intent is sexual, then it's sexual. I don't believe that's what Cenarius stands for. And that's why we believe there's an element missing. I'll reserve four seconds. Thank you, counsel. May it please the Court. My name is Serena Case Hargrove. I'm the appellate coordinator for the District of Idaho. With me is Mike Mitchell. He's an assistant U.S. attorney and was the trial attorney in this case. We intend to divide the government's time equally. With me addressing the Section 2252 enhancement – Would the clerk please limit the present counsel to five minutes? Thank you, Your Honor. And Mr. Mitchell will address the Guidelines Enhancement of Section 2G2.2. In discussing Cenarius, it is clear that the Montana statute is different from the Idaho statute, and the Montana statute did, in fact, require touching of sexual parts. However, as the Court has pointed out, the definition of sexual abuse in Cenarius does not necessarily require the touching of sexual parts. Certainly, it would include that, but it doesn't necessarily require it. In addition, Your Honors, the District Court in this case focused not on the term sexual abuse, but actually on the term abusive sexual conduct involving a minor. Can I ask you – I find the Supreme Court's modified categorical approach a bit mystifying, and this question about missing an element is not very clear. Now, when I look at how Cenarius defines the sexual abuse, the abuse term requires some harm. It has to be a harmful effect. The Idaho law doesn't seem to include that harmfulness issue. Why isn't that missing an element? Well, abusive sexual conduct involving a minor, the term abusive certainly does contemplate some harm. The Idaho statute can, I would have to acknowledge, can be violated at its outmost, outermost regions with someone who is touching a child for his or her own purposes and misusing the child for a sexual purpose. I believe the Idaho statute then assumes that that is harmful to a child or to society. Because the one I'm looking at, 18-1506, doesn't seem to have that word in there. Maybe that's just an assumption. That's correct, Your Honor. It does not have the term harm in there. I would say that would be similar to the James case, Supreme Court case, in which the question was, did the crime of burglary carry with it a certain danger? And that would be a danger of harm to other people. And in this case, I would say the same thing, that the Idaho statute encompasses behavior that would be abusive or damaging to a child, even though it doesn't actually require that. The Idaho statute could be violated while the child was asleep. Your Honor, that's correct. So how could there be, how could you say that it has inherently a requirement of harm to the child, the child who's asleep? Well, I think the Idaho statute is concerned with behavior that is inappropriate and misusing children. Inappropriate means that you don't like it. It involves misuse of children for sexual purposes. And whether the child, we don't know whether a sleeping child would be harmed in some way or not. But if the child were unaware of it, the Idaho has still decided that that causes harm, that that's worth precluding and making criminal. I recall seeing the word harm in any sex crime statute. It seems like we just assume that anything that's done for somebody's sexual gratification is harmful to the other person. And, for example, your typical rape statute doesn't require injury or harm. Well, I wonder, is there some limit to that principle under the scenario? A limit to the... The example given by your opposing counsel, the massage, the feet, and harmful, let's see, a person says, oh, that guy was a foot fetishist. Oh, I'm disgusted. I'll never forget this. It's so disgusting. Well, actually, I was kidding him. He isn't. Oh, well, that's okay, then. Is that all there is to harm? Well, the Idaho statute is interesting because it would be very hard, I believe, to actually convict someone who was, while the statute could encompass a foot massage with someone who's a foot fetish, to be convicted of that. The Idaho statute would require that the person, the defendant, have the intent of satisfying his lust, passions, and so on. That would be very, very hard to prove. I mean... I guess they do a search of his computer. Under CBT? Your Honor, no, it would be very hard to prove, though. So, yes, it does cover that behavior. The chance of someone being convicted of that and having the actual proof of that is very limited. But for the categorical approach and determining whether we do modify categorical, we don't care about what reality is. We're just looking at the words of the statute and what they encompass. And here, it's also, would fit into our definition, possibly, a statutory rate where you have the 18-year-old and the almost 16-year-old would be punishable under this section. And we've said in Estrada Espinoza that doesn't constitute abuse. So I'm concerned about the lack of any reference to abuse or even any necessity of abuse in order to get a conviction. Again, it would be very difficult, as I said, I think, to do that because you would have to show the sexual desires and intent of the defendant. In this case, though, we're not actually arguing about the categorical approach. We're arguing about the modified categorical approach. And it's very clear, once you look at the facts of this case, that it does satisfy. The age differential is tremendous and there certainly was sexual intent here. I see that I'm over my time, Your Honors. Thank you, Counsel. Thank you. May it please the Court. My name is Mike Mitchell and I was the attorney representing the United States in sentencing. It's clear from the evidence in the record that the District Court did not abuse its discretion by applying the Pattern of Activity Adjustment under Section 2G 2.2b-5. Pattern of Activity, as the Court knows, requires two instances of sexual abuse or exploitation of a minor. It does not require a conviction, but it does require that the United States establish that the defendant committed conduct exploiting or sexually abusing a child. Could you tell me, I have not encountered this type of evidentiary hearing that the District Court put on in order to bring in the abuse victim and interviewer, essentially, get evidence from her. What case or what provisions would establish that this was appropriate for the District Court and what sorts of procedures should be in place for that? Well, the Court can hold evidentiary hearings just like in any case where there is a contest about sentencing guidelines and whether sentencing guidelines are admissible or should be imposed. The Court can have an evidentiary hearing. I mean, the United States, in this case, we had police reports. We provided them to the defense back in November of 2008, approximately nine months prior to this hearing. We could have relied solely upon the police reports, submitted those, submitted the statement of an officer, and in some cases could have actually, like in the Paul case from the Sixth Circuit, in Paul from the Sixth Circuit, it was a pattern of activity adjustment. The U.S. probation officer interviewed the victim of the sexual abuse from decades earlier, got a statement from that individual, from that person who had been sexually abused, and the probation officer took the witness stand during the sentencing hearing and spoke about interviewing the victim and interviewing the family members. And we could have gone through that process, but we felt that it was fair and we felt that we should actually bring the victim in. Rather than just relying upon these police reports back from the early 90s that we gave defense counsel at the very beginning in the discovery process and put them on notice, we thought that we should actually bring the victim in and give defense counsel a chance to cross-examine her. And when she testified in this case, she definitively and clearly established that she was sexually abused on July 3rd of 1992, which actually resulted, as the court knows, in the conviction of the defendant under Idaho law. And she also established, and the police reports indicated this as well, that there was another incident on July 11th of 1992 where she was also sexually abused. And so in this case, you actually had the victim coming before the district court, testifying, being subject to cross-examination. In addition, you have these police reports that absolutely corroborated everything she said about both instances, about the July 3rd, 1992 incident, as well as the July 11th of 1992 incident.  having brought her in than not having brought her in. Absolutely. Absolutely, Your Honor. Is there any provision? I don't recall any in Rule 32 that requires notice of what witnesses you're going to bring in. I'm not aware of any provision. And I know that we cited in our brief a local rule or anything? Not that I'm aware of. But we did give notice. In this case, on July 9th of 2009, we filed an objection to the PSR stating that the PSR didn't include the pattern of activity and adjustment and that we were going to establish that on July 3rd and July 11th. But you didn't give notice you were going to bring her to the hearing? We gave them notice that we were going to prove it. And then what happened is at some later point, we indicated there was a telephone call where we explained Do you need notice? No, Your Honor. You don't. According to Your Honor, the question is you gave them notice that you disputed the pattern at determination because in your view there was a pattern on account of this prior contact with this woman. Yes, Your Honor. And that gave notice that that was at issue. You did not tell them you were bringing the woman to the sentencing hearing. You did bring the woman to the sentencing hearing, but there's no rule against that. Exactly, Your Honor. But the record is even better than that. Now tell me, do we even reach this issue if the defense loses on whether 18 the 18-1506 conviction is a crime of sexual abuse involving a minor with a mandatory 10-year minimum? Yes, Your Honor. We still have to consider that those are two separate we have one one is a statutory enhancement under 18 U.S.C. if I'm understanding the Court correctly under 18 U.S.C. 2252b2 You gave the defendant the 10-year mandatory minimum. I'm wondering if it matters whether you win or lose on the pattern or whether we should even reach pattern. Because all it would do is enhance the guidelines and he didn't get the guideline sentence regardless. It's true, Your Honor. He got the guideline sentence as the Court knows I think it was 135 to 100 and something months. I had 120. And he did. He got well under the sentencing guidelines for this case. So why would it matter? You said it would matter anyway. Why? Well, I it's the Court has to accurately according to this Court's case law the Court has to accurately determine whether or not the sentencing guidelines are applicable in each case. My argument is the Court did in fact in this case get it right and that the pattern of activity adjustment does in fact apply but the Court's correct. Nevertheless, I mean the 120-month sentence was well under the sentencing guidelines and frankly 120 months was a sentence the Court could have reached had they not had the Court not even implied the statutory enhancement that Ms. Hargrove spoke about a minute ago because the Court could have given   or even without the pattern of activity adjustment the 120-month number could have been reached. Thank you, counsel. Thank you, Your Honor. Just briefly, Your Honor. Two points. I did want to point out there's been discussion about whether the information can be used to fill out the modified categorical approach and I did want to point out that the Guilliamontes-Deoka case is still pending on bond decisions. We're still waiting on a decision addressing that specific issue. So to the extent that's relevant I would ask the Court to wait and see what the decision in the Guilliamontes is. Thank you, counsel. The clerk just signaled me that you had in fact gone over your time and said you recollected it. I believe I had        is submitted and will take the floor. Thank you, counsel. United States v. Hendricks is submitted and will take the floor. Thank you, counsel. United States v. Hendricks is submitted and will take the floor. Thank you, counsel.
judges: Kleinfeld, Bea, Ikuta